# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
|  | Case No. CV-14-106-JPH |
| MYLYNDA SUE DENNIS, | |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 14, 15. Attorney Dana Madsen represents plaintiff (Dennis). Special Assistant United States Attorney Franco L. Becia represents defendant (Commissioner). The parties consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the court **grants** plaintiff's motion for summary judgment, ECF No. 14, and reverses for further proceedings.

ORDER ~ 1

1

**JURISDICTION**

2     Dennis applied for supplemental security income (SSI) February 8, 2011

3   alleging disability beginning June 1, 2009 (Tr. 141-46). The claim was denied

4   initially and on reconsideration (Tr.  95-98, 102-04). Administrative Law Judge

5   (ALJ) Caroline Siderius held a hearing November 27, 2012. Dennis, represented by

6   counsel, and vocational and medical experts testified (Tr. 39-64). January 4, 2013,

7   the ALJ issued an unfavorable decision (Tr. 23-33). In February 2014 the Appeals

8   Council denied review (Tr. 1-6). Dennis appealed April 18, 2014  pursuant to 42

9   U.S.C. §§ 405(g). ECF No. 1, 4.

10                          **STATEMENT OF FACTS**

11     The facts appear in the administrative hearing transcript, the decisions below

12   and the parties' briefs. They are only briefly summarized here and throughout this

13   order as necessary to explain the Court's decision.

14     Dennis was 28 years old at the hearing. She has an eighth grade education, no

15   GED and no driver's license. She last worked as a receptionist through a DSHS

16   program. She suffers migraine headaches, tendonitis, back pain and sleep problems.

17   She has undergone ACL surgery twice: on the right knee in 2009 and the left in

18   2010. Walking and standing are difficult. She can stand fifteen or twenty minutes,

19   walk two blocks and lift ten pounds. One of the prescribed medications makes her

20

ORDER  ~ 2

sleepy. She suffers memory, emotional and intellectual difficulties (Tr. 47-57, 172, 248, 364, 367).

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§

ORDER ~ 3

1   404.1520(a)(4)(ii), 416.920(a)(4)(ii).

2   If plaintiff does not have a severe impairment or combination of impairments,

3   the disability claim is denied. If the impairment is severe, the evaluation proceeds to

4   the third step, which compares plaintiff's impairment with a number of listed

5   impairments acknowledged by the Commissioner to be so severe as to preclude

6   substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20

7   C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed

8   impairments, plaintiff is conclusively presumed to be disabled. If the impairment is

9   not one conclusively presumed to be disabling, the evaluation proceeds to the fourth

10   step, which determines whether the impairment prevents plaintiff from performing

11   work which was performed in the past. If a plaintiff is able to perform previous work

12   that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv),

13   416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is

14   considered. If plaintiff cannot perform past relevant work, the fifth and final step in

15   the process determines whether plaintiff is able to perform other work in the national

16   economy in view of plaintiff's residual functional capacity, age, education and past

17   work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v.*

18   *Yuckert*, 482 U.S. 137 (1987).

19   The initial burden of proof rests upon plaintiff to establish a *prima facie* case

20   of  entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir.

ORDER ~ 4

1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is

met once plaintiff establishes that a mental or physical impairment prevents the

performance of previous work. The burden then shifts, at step five, to the

Commissioner to show that (1) plaintiff can perform other substantial gainful

activity and  (2)  a "significant number of jobs exist in the national economy" which

plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's

decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision,

made through an ALJ, when the determination is not based on legal error and is

supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir.

1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's]

determination that a plaintiff is not disabled will be upheld if the findings of fact are

supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.

1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla,

*Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a

preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989).

Substantial evidence "means such evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401

(1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner]

ORDER ~ 5

1   may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*,

2   348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a

3   whole, not just the evidence supporting the decision of the Commissioner. *Weetman*

4   *v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525,

5   526 (9th Cir. 1980)).

6        It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.

7   *Richardson*, 402 U.S. at 400. If evidence supports more than one rational

8   interpretation, the Court may not substitute its judgment for that of the

9   Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th

10  Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be

11  set aside if the proper legal standards were not applied in weighing the evidence and

12  making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d

13  432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the

14  administrative findings, or if there is conflicting evidence that will support a finding

15  of either disability or nondisability, the finding of the Commissioner is conclusive.

16  *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

17                            **ALJ'S FINDINGS**

18       ALJ Siderius found Dennis did not work at substantial gainful activity levels

19  after she applied for benefits  (Tr. 25).  At steps two and three, she found Dennis

20  suffers from learning disorder; bipolar disorder; attention deficit hyperactivity

ORDER ~ 6

disorder (ADHD); obesity; migraine headaches; bilateral knee pain post surgeries and asthma, impairments that are severe but do not meet or medically equal a Listed impairment (Tr. 25, 27). The ALJ found Dennis less than fully credible and assessed an RFC for a range of sedentary work  (Tr. 28-29).  At step four, relying on a vocational expert, the ALJ found Dennis is unable to do any past relevant work  (Tr. 32, 60).   At step five, she found Dennis can do other work such as document preparer. Accordingly, the ALJ found Dennis was not disabled as defined by the Act from onset through the decision date  (Tr. 33).

## ISSUES

Dennis alleges the ALJ erred in two respects: when she assessed credibility and weighed the evidence. ECF No. 14 at 13. The Commissioner responds that because the ALJ's findings are factually supported and free of harmful legal error, this court should affirm. ECF No. 15 at 2-3.

## DISCUSSION

*A. Credibility*

When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's credibility findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for

ORDER  ~ 7

1    rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*,

2    81 F.3d 821, 834 (9th Cir. 1995).

3        Dennis alleges the ALJ cited reasons were improper and/or unsupported by

4    the record. ECF No. 14 at 13-15. The Court addresses each.

5        The ALJ relied on daily activities inconsistent with the degree of limitation

6    alleged, in particular, the ability to care for a child and perform housework  (Tr. 29-

7    30).  The Commissioner responds that Plaintiff told an examining source she had the

8    capacity to complete most basic household chores, including cleaning, cooking and

9    laundry tasks. She reported caring for her young daughter, including bathing her,

10   taking her to the park, playing games with her and walking her to school and back

11   daily. The Commissioner asserts that "[e]ven if these activities do not conclusively

12   establish Plaintiff's ability to perform work activities, they are inconsistent with her

13   alleged level of impairment and thus allow the ALJ to draw an adverse inference as

14   to her credibility." ECF No. 15 at 9-10, Tr. 51-52, 392. Plaintiff's reply is simply

15   incorrect when she alleges the ALJ did not rely on daily activities. *Cf.* ECF No. 16 at

16   4 *with* Tr. 29 (ALJ states activities do not indicate a complete inability to work).

17       It is true that certain activities, such as the ability to care for young children,

18   may be inconsistent with and cast doubt on claimed disabling limitations. *See e.g.,*

19   *Rollins v. Massanari*, 261 F. 3d 853 (9th Cir. 2001). The exam the Commissioner

20   refers to was Dr. Quackenbush's June 21, 2011 evaluation. At that time Dennis and

ORDER  ~ 8

1    her daughter were homeless and living in a shelter (Tr. 392). At the hearing in

2    November 2012 Dennis testified she walks her daughter about a block and a half to

3    school (Tr. 52). She has a friend who helps with more than minor cleaning,

4    sometimes helps bathe her daughter, and assists with cooking and grocery shopping

5    (Tr. 52, 56). In the Court's view this reason alone would not support the ALJ's

6    negative credibility assessment.

7         The ALJ relied on failure to comply with treatment, including regularly taking

8    prescribed medication. The ALJ states "[t]he record shows the claimant was

9    repeatedly advised to lose weight, but she continued to gain weight instead." (Tr. 30,

10    referring to Tr. 398: "She should also focus on weight loss"). The Commissioner

11    cites the ALJ's statement that "[i]f the claimant's health problems were not severe

12    enough to motivate her to comply with treatment, it is difficult to accept her

13    assertion that they are disabling." ECF No. 15 at 11 citing Tr. 30.

14         The Court agrees with Dennis this was improper. On October 28, 2010

15    treating source Rebecca Reidy ARNP notes Dennis "was not consistently taking

16    medication including for thyroid" and was living in a shelter where she had no

17    control over the food served  (Tr. 219). Dennis told a counselor in November 2011

18    she gained fifty pounds since she started taking seroquel in January 2010,  a

19    medication prescribed for bipolar disorder (Tr. 404).    It  is  noted  Dennis  was

20    terminated from physical therapy for failing to attend regularly. Dr. Powers indicates

ORDER ~ 9

1    this was "due to a variety of social issues" (Tr. 374-75, 388).

2        Unexplained or inadequately explained noncompliance with medical

3    treatment may be considered when weighing credibility. *See Fair v. Bowen*, 885

4    F.2d 597, 603 (9th Cir. 1989). Arguably these are adequate explanations for Dennis's

5    failure to comply with medical recommendations to lose weight, regularly attend

6    physical therapy and regularly take prescribed thyroid medication. The ALJ does not

7    address the explanations for Dennis' failure to consistently comply.

8        The ALJ relied on testimony contradicted by treating source opinion, namely,

9    Dr. Powers' April 2011 opinion Dennis could return to work (Tr. 30, citing Ex.

10   3F/21 at Tr. 384). The ALJ asserts this opinion contradicts Dennis's testimony,

11   because if credited, her testimony would indicate she is disabled.

12       However, as Dennis correctly points out,  Dr. Powers' RFC contains no

13   mental limitations. As a result the opinion is based on an incomplete understanding

14   of Dennis's limitations, as even the ALJ assessed mental limitations in her RFC.

15   ECF No. 14 at 15. Dr. Powers' opinion is also ambiguous. It is dated April 20, 2011

16   and states Dennis "may return to work on April 20,  2011" and "She should not be

17   working until I see her back in 2-3 weeks" (Tr. 384). The ALJ erred in relying on

18   this obviously ambiguous statement to impugn Dennis's credibility.

19       The ALJ relied on the lack of motivation to return to work, noting the

20   evidence "also indicates that the claimant is not particularly motivated or interested

ORDER ~ 10

1    in working" (Tr. 30). The ALJ may certainly consider motivation and the issue of

2    secondary gain in rejecting symptom testimony. *See Tidwell v. Apfel*, 161 F.3d 599,

3    602 (9th Cir. 1998); *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020

4    (9th Cir. 1992). Here, however, the ALJ does not cite to *anything* in the record

5    supporting the blanket assertion Dennis is not motivated or interested in working.

6    The ALJ relied on the lack of prescribed pain medication, except she notes

7    pan medication has been prescribed for headaches (Tr. 30, citing Exhibit 11F at Tr.

8    443). The Commissioner alleges the ALJ properly relied on Dennis' November 2012

9    self-reported medication list that does not include medication prescribed for knee

10   pain; she asserts this is at odds with allegedly debilitating knee symptoms. ECF No.

11   15 at 10-11, n 4.

12   The ALJ is incorrect. Treatment providers prescribed pain medication for the

13   right wrist on at least three occasions: January 26, 2011 (lortab, Tr. 240-41), January

14   30, 2011 (hydrocodone, Tr. 238) and  February 9,  2011 (hydrocodone, Tr. 211).

15   Pain medication was also prescribed following two knee surgeries in 2009 and 2010

16   (Tr. 371, 382). It is unclear whether correcting this error would lead to a different

17   credibility determination.

18   Because most of the ALJ's reasons are not clear, convincing and supported by

19   the record, the Court is not confident the RFC assessment accurately captures all of

20   her  limitations. *See Gallant  v.  Heckler*,  753  F.2d  1450,  1456 (9th  Cir.  1984)

ORDER ~ 11

("Because … the ALJ had no clear or convincing reasons for rejecting [claimant's allegations of persistent disabling pain], claimant's pain should have formed a part of the ALJ's question to the expert"). The ALJ is correct Dennis at times failed to comply with medical treatment (i.e., regularly attend physical therapy and consistently take prescribed thyroid medication) and was not always prescribed pain medication. The ALJ's credibility assessment is not supported by the record and contains harmful legal error requiring remand.

*B. Medical evidence*

Dennis alleges the ALJ erred when she weighed the medical opinion evidence. Specifically, she alleges the ALJ failed to properly credit Dr. Layton's numerous assessed moderate limitations, despite purporting to give it "great weight." [Plaintiff's brief mistakenly refers to Dr. Haynes's testimony but it is clear from the record she means Dr. Layton. ECF No. 14 at 16.] Dennis alleges the ALJ erred by rejecting Dr. Arnold's opinion. Dr. Arnold assessed five marked limitations. ECF No. 14 at 15-18; Tr. 440.

Dr. Layton reviewed the record and testified. He opined activities of daily living are moderately impaired; social activity is moderately impaired and "concentration, persistence and pace is moderately impaired by the anxiety" (Tr. 45). Unsurprisingly he assessed numerous moderate limitations. Dr. Layton questioned how Dennis was able to do child care as employment with an assessed GAF of 50.

ORDER ~ 12

1  Dennis clarified that she did this work when she was sixteen years old and worked

2  for her sister (Tr. 43-46).

3      Dennis has three older children who were removed from her care and adopted

4  in 2006 (Tr. 304, 390, 399, 405). She and her daughter, age five at the hearing,  have

5  been homeless and at times stayed in shelters (Tr. 45, 159, 212-17, 390, 400).

6  Dennis' work history indicates the longest employment was four to six months. All

7  past work has been part-time, other than when she was sixteen and worked for her

8  sister as a childcare provider (Tr. 44, 178, 205, 391, 436).

9      Following a June 21, 2011 evaluation and testing, Robert Quackenbush,

10  Ph.D., notes Dennis "exhibits significant physical, cognitive and emotional

11  problems, however her emotional stability will likely improve with continued

12  therapy and medication management services." He opined the prognosis appears

13  guarded to fair  (Tr. 393). The ALJ purports to give this opinion "great weight" (Tr.

14  30).

15      John Arnold, Ph.D., performed testing as part of his evaluation in October

16  2012. He assessed a GAF of 50 indicating serious symptoms or impairment in

17  functioning and opined the prognosis is poor.  He opined Dennis is markedly limited

18  in the ability to sustain an ordinary routine without special supervision and in the

19  ability to complete a normal workday, among others (Tr. 434-42).

20      The ALJ erred when she weighed the medical evidence.

ORDER ~ 13

1    The ALJ purported to give "great weight" to Dr. Layton's and Dr.

2  Quackenbush's opinions but failed (without explanation) to include some of the

3  limitations they assessed. The ALJ gave little weight to Dr. Arnold's opinion. Some

4  of the reasons include that the psychologist "was hired by the claimant's attorney to

5  show that she was disabled"; assessed marked limitations are unsupported by the

6  record because Dennis has been able to "raise and care for her daughter and perform

7  the necessary chores associated with running a household"; possibly Dr. Arnold

8  expressed his opinion in an effort to help Dennis because he "sympathizes" with her;

9  patients can be quite demanding and supportive notes may be provided to avoid

10 "unnecessary  doctor/patient tension" [even though Dr. Arnold is an examining

11 source] and an opinion that departs substantially from the rest of the record renders it

12 less persuasive  (Tr. 31).  Only the last reason is specific and legitimate.

13    Because the ALJ erred when assessing the conflicting evidence the question

14 presented to the VE may not have included all of Dennis's limitations. On remand

15 the ALJ will reassess credibility, discuss and weight the evidence of mental and

16 physical impairments, make a new RFC determination and continue with the

17 sequential evaluation.

18    The Court wishes to make clear that it expresses no opinion as to what the

19 ultimate outcome on remand will or should be. "[Q]uestions of credibility and

20

ORDER ~ 14

resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## CONCLUSION

After review the Court finds the ALJ's decision is not supported by substantial evidence and contains harmful legal error.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment, **ECF No. 14**, is **granted.** The case is reversed and remanded for further administrative proceedings.

2. Defendant's motion for summary judgment, **ECF No. 15**, is **denied**.

3. The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of plaintiff and **CLOSE** the file.

DATED this 17th day of February, 2015.

*S/ James P. Hutton*

JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE

ORDER ~ 15